UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DAVID B. LINDER,

          Plaintiff,

      v.

JOHN E. POTTER, POSTMASTER
GENERAL, UNITED STATES POSTAL
SERVICE,

         Defendant.

No. CV-05-0062-FVS

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE AFFIRMATIVE
DEFENSES

**THIS MATTER** came before the Court for a telephonic hearing on the parties' cross motions for summary judgment.  Plaintiff was represented by Kenneth L. Isserlis.  Defendant was represented by Andrew S. Biviano.  This order is intended to memorialize and supplement the Court's August 13, 2009 oral ruling.

    **BACKGROUND**

**I.  Facts**

    David B. Linder ("Plaintiff") worked for the United States Postal Service ("USPS") from 1973 until 2003.  During his career, Plaintiff served as both a mail carrier and a supervisor.  In April of 2003, Plaintiff became the customer service supervisor at the Annex in Coeur d'Alene, Idaho.  Plaintiff found his position in Coeur d'Alene very stressful and began seeing Dr. Ray Smith, a licensed mental health counselor, for weekly counseling sessions.  He additionally spoke to his primary care physician, Dr. William T. Roth, about emotional

ORDER . . . - 1

problems.  Dr. Roth and Dr. Smith diagnosed Plaintiff with anxiety, depression, and Post Traumatic Stress Disorder ("PTSD").

Plaintiff took a Family and Medical Leave Act ("FMLA") absence from June 16, 2003, until September 22, 2003.  During his absence, Plaintiff requested reassignment to a different location.  Dr. Roth also wrote to USPS, recommending that Plaintiff "look for work elsewhere in the Postal Service."  On September 23, 2003, Plaintiff sent his immediate supervisor, Karen Wren-Youngblood, a handwritten note requesting he be placed on sick leave "until further notice." After he did not return to work on September 22, 2003, USPS advised Plaintiff,

> You must return to work immediately if cleared by your
> treating physician.  If your treatment provider will not
> release you to return to duty, the Postal Service will
> initiate disciplinary action to remove you for excessive
> absences . . . .  If your treatment provider certifies you
> are permanently, totally disabled for work as a Supervisor,
> Customer Service, you may be eligible to apply for a
> disability retirement.

USPS denied Plaintiff's request for a transfer on October 7, 2003.

Plaintiff applied for disability retirement on October 16, 2003. On November 6, 2003, USPS offered Plaintiff a position as a letter carrier in Spokane.  USPS also informed Plaintiff that he could apply for a reasonable accommodation.  On November 28, 2003, Plaintiff declined the letter carrier position, explaining, "my age, bad knees, and the stress of returning to craft work under these circumstances are reasons why I cannot accept [USPS's] offer."  In the same letter, Plaintiff requested a reasonable accommodation, and suggested two possibilities.  First, he suggested that continued medical leave would enable him to overcome his illness.  Second, he suggested that "an

ORDER . . . - 2

office assignment providing support to the stations or any other technical support would be reasonable accommodation."

In mid-December, Plaintiff met with USPS's Spokane District Reasonable Accommodation Committee ("DRAC"). In assessing Plaintiff's potential disability, DRAC relied upon a form listing Plaintiff's medical restrictions that had been prepared by Occupational Health Nurse Administrator Patricia Buntrock. DRAC ultimately determined that Plaintiff did not have a disability because his "condition has not been identified as permanent nor does his condition significantly affect one or more major life activities." DRAC denied his request for a reasonable accommodation by letter on January 9, 2004. Plaintiff appealed DRAC's denial to his second level supervisor, Phillip Kuntz, who denied the appeal on January 23, 2004.

Since leaving work, Plaintiff has seen two other doctors in connection with his mental health. During 2004, Plaintiff had more than 20 individual counseling sessions with Dr. John Estelle, a psychologist. In September 2005, the United States Department of Labor's Office of Workers Compensation Programs sent Plaintiff to Dr. David Bot, a psychiatrist. Dr. Bot diagnosed Plaintiff with anxiety and depression, but did not concur in Dr. Roth's PTSD diagnosis. Plaintiff has since had surgery on his right shoulder in order to address "shoulder pain and limited function/range of motion over the past two years."

**II. Procedure**

Plaintiff filed this action on February 25, 2005, alleging that USPS unlawfully discriminated against him based on his disability.

ORDER . . . - 3

(Ct. Rec. 1).  Plaintiff claims that USPS violated Section 501 of the Rehabilitation Act by failing to accommodate his disability and subjecting him to a disability-based hostile work environment.  The parties subsequently moved for summary judgment.  (Ct. Rec. 26, 30).

Following extensive briefing and argument, the Court granted summary judgment in favor of Defendant finding that Plaintiff failed to carry his burden of showing that his impairments substantially limited his ability in a specified major life activity.  (Ct. Rec. 93).  However, on December 22, 2008, the Ninth Circuit Court of Appeals reversed the judgment of the Court on the "narrow issue" of whether Plaintiff's impairments substantially limit his ability to perform the major life activities of thinking and concentrating.  (Ct. Rec. 110).  The Ninth Circuit indicated that evidence provided by Plaintiff's doctors, as well as Plaintiff's other medical evidence and own statements concerning the effect of his limitations, create a genuine issue of material fact as to whether his limitations are substantial.  *Id.*  The matter was thus remanded to this Court for further proceedings.

At an April 3, 2009, scheduling conference, the parties were directed to submit supplemental briefing on the impact of the Ninth Circuit's ruling as well as the impact of the Americans with Disabilities Act Amendments Act of 2008.  The parties provided supplemental briefs on May 26, 2009 (Ct. Rec. 119, 120), and supplemental response briefs on June 9, 2009 (Ct. Rec. 122, 123).  Telephonic oral argument on the parties' previously filed cross-motions for summary judgment was heard on August 13, 2009.

**DISCUSSION**

**I.    Motions for Summary Judgment**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist. *See id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

Section 501 of the Rehabilitation Act prohibits federal employers from discriminating against their employees on the basis of disability. *Nimi-Montalbo v. White*, 243 F.Supp.2d 1109, 1121 (D.Haw. 2003). Where a federal employee alleges disability discrimination against his or her employer, the standards to be applied are those of the Americans With Disabilities Act ("ADA"). 29 U.S.C. § 791(g); 29 C.F.R. § 1614.203(a). The Ninth Circuit has indicated that courts may consult case law interpreting the ADA in interpreting the Rehabilitation Act because "there is no significant difference in the analysis of rights and obligations created by the two Acts." *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002).

Plaintiff alleges three causes of action under Section 501 of the Rehabilitation Act: failure to accommodate his disability, discriminatory discharge, and disability based hostile work environment.

**A.    Failure to Accommodate Disability**

Under the Rehabilitation Act and the ADA, an employer must reasonably accommodate the known physical or mental limitations of an otherwise qualified individual with a disability.  42 U.S.C. § 12112(b)(5)(A).  Therefore, in order for Plaintiff to prevail on a claim that Defendant failed to accommodate his disability, Plaintiff must show (1) he has a disability, (2) he is a qualified individual with a disability, and (3) his employer failed to reasonably accommodate his known limitations.

**1.    Disability**

A person has a disability for the purposes of the Rehabilitation Act and the ADA when he has "a physical or mental impairment that substantially limits one or more of the major life activities."  42 U.S.C. § 12102(2)(A).  Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  "An impairment 'substantially limits' one's ability to carry out a major life activity if, because of the impairment, the individual is '[s[ignificantly restricted as to the condition, manner, or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same

major life activity.'"  *Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1135 (9th Cir. 2001) (quoting 29 C.F.R. § 1630.2(j)).

### a.    Impairment

Plaintiff alleges that he suffers from Post-Traumatic Stress Disorder ("PTSD"), depression, and anxiety disorder with adjustment disorder.  Defendant does not dispute that the Plaintiff suffers from an impairment, although the nature and extent of the Plaintiff's impairment is contested.  (Ct. Rec. 27-1 at 5).  As previously concluded by this Court (Ct. Rec. 93 at 7), and as stated at the hearing on August 13, 2009, Plaintiff has satisfied the first step of the inquiry, demonstrating he has an impairment.

### b.    Major Life Activities

Plaintiff alleges that his mental health impairments substantially limit his ability to "think, concentrate, and interact with others."  (Ct. Rec. 33 at 24).  Although Defendant argues that Plaintiff is not limited in the major life activity of working, Plaintiff no longer asserts a limitation on his ability to work as a basis for being an individual with a disability.  (Ct. Rec. 54-1 at 8).  Therefore, the only activities at issue are those of thinking, concentrating, and interacting with others.

This Court previously discussed the activities of thinking, concentrating and interacting as they relate to Plaintiff and determined that Plaintiff "is limited in at least one major life activity."  (Ct. Rec. 93 at 7-9).  The Court continues to find that Plaintiff has satisfied this step of the inquiry as well.

///

ORDER . . . - 7

c.    **"Substantially" Limits Major Life Activities**

"Substantially limits" means that the person is either unable to perform a major life function or is "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to . . . the average person in the general population."  29 C.F.R. § 1630.2(j)(1). Whether an individual is "substantially limited" in a major life activity is generally a question for the finder of fact.  *Bristol v. Bd. of County Comm'rs of Clear Creek*, 281 F.3d 1148 (10th Cir. 2002). However, summary judgment is appropriate when the non-moving party has failed to present sufficient evidence to enable a trier of fact to find that a plaintiff's impairment limited him or her substantially. *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540-541 (9th Cir. 1997).

With regard to the issue of whether Plaintiff is substantially limited, the Ninth Circuit found that Plaintiff provided sufficient evidence of substantiality of impairment to survive a summary judgment motion.  (Ct. Rec. 110 at 2).  The Ninth Circuit held that the evidence of record creates a genuine issue of material fact as to whether Plaintiff's limitations are substantial.  (Ct. Rec. 110 at 3). Based on this finding by the Ninth Circuit, summary judgment is not appropriate on the issue of whether Plaintiff has a disability for purposes of the Rehabilitation Act and the ADA.

2.    **"Qualified" Individual**

The Rehabilitation Act and the ADA prohibit discrimination against a *qualified* individual with a disability."  42 U.S.C. § 12112(a) (emphasis added).  A person is a "qualified" individual with

a disability for purposes of the Rehabilitation Act and the ADA if he or she has a disability and

> satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.

29 C.F.R. 1630.2(m).  Therefore, an individual is considered qualified as long as he or she is able to perform the essential functions of his or her job with or without reasonable accommodation.

Defendant asserts that Plaintiff's own statements and actions demonstrate he was not qualified to perform the essential functions of his former position.  (Ct. Rec. 120 at 9).  Specifically, Defendant indicates that, on November 28, 2003, Plaintiff informed the Postal Service that "My primary care physician has clearly stated I should not return to the Coeur d'Alene post office or to supervising elsewhere." (Ct. Rec. 31 at 122).  In addition, on November 5, 2003, Dr. Roth stated "It is my medical opinion that Mr. Linder will not reach a point of full or partial recovery . . . .  I believe that Mr. Linder is at risk and thus puts his subordinates and the public at risk." (Ct. Rec. 31 at 194).  Defendant contends this shows that Plaintiff was not qualified to perform his former position.

Defendant also argues that Plaintiff can no longer be considered a "qualified" employee because he rejected the letter carrier position USPS offered him as a reasonable accommodation.  An individual may lose his or her status as a qualified individual with a disability if he or she "rejects a reasonable accommodation [. . .] that is necessary to enable the individual to perform the essential functions

ORDER . . . - 9

of the position held or desired." 29 C.F.R. 1630.9(d); *Toye v. United Airlines, Inc.*, 172 F.3d 59 (9th Cir. 1999). Under the ADA regulations, "reasonable accommodations" can include a variety of adjustments, including reassignment. 29 C.F.R. § 1630.2(o).

Defendant asserts that it offered to reassign Plaintiff to a letter carrier position in the Spokane area. Defendant argues that the letter carrier position was a reasonable accommodation because it was a vacant position, located outside of Coeur d'Alene, that did not require Plaintiff to interact with others, and complied with the physical limitations of Plaintiff which USPS was aware. (Ct. Rec. 27-1 at 11). Moreover, Plaintiff had held a letter carrier position as recently as 2000. Defendant indicates that the letter carrier position was consistent with all of Plaintiff's known limitations at the time it was offered to Plaintiff.

Defendant lastly contends that there remained no other vacant, funded positions that Plaintiff was qualified to perform. (Ct. Rec. 120 at 11).

Plaintiff argues that he is a "qualified individual" because he met the education and experience requirements for his position as a supervisor in Coeur d'Alene and the vacant "reassign positions" in Spokane he has identified.

Plaintiff asserts that the letter carrier position was not a reasonable accommodation because it was not offered as such. Plaintiff further argues that Defendant's offer to reassign Plaintiff to a letter carrier position was not a reasonable accommodation

///

ORDER . . . - 10

because Plaintiff was not physically able to perform the job due to his shoulder pain, bad knees, and age.  (Ct. Rec. 54-1 at 14).

Plaintiff has provided vocational evidence indicating that there were "at least 60 positions" available during the time period at issue that Plaintiff was qualified to perform.  (Ct. Rec. 122 at 15-16). Defendant has failed to adequately rebut this evidence.

The record contains conflicting evidence as to whether the letter carrier position was offered as a reasonable accommodation.  USPS offered Plaintiff this position before the DRAC meeting, and after Plaintiff had applied for disability retirement.  However, a reasonable accommodation need not necessarily be the result of a formal process such as the DRAC meeting.  29 C.F.R. § 1630.2(o).  The letter conveying the offer of this position does refer to Plaintiff's limitations in specific terms and explains why the letter carrier position would comply with Plaintiff's needs.

Even if the letter carrier position was deemed an offer of a reasonable accommodation, Plaintiff has raised a genuine issue of fact as to whether he could perform the duties of a letter carrier. Plaintiff has provided evidence that he was experiencing shoulder pain in 2003, for which he eventually underwent surgery.  While an employee may lose his or her status as a "qualified individual" under Section 1630.9(d) if he rejects a reasonable accommodation based on a personal preference, *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 458 (6th Cir. 2004); *Dugan v. Intel Corporation*, No. CV-04-1380-PHX-RCB, 2006 WL 1541475, at *3 (D.Ariz. 2006), no caselaw has been provided which indicates that an employee may lose his status as a "qualified

ORDER . . . - 11

individual" by rejecting a position that he is unable to perform for reasons unrelated to his disability.

Moreover, Plaintiff declined the letter carrier position in the same letter in which he requested a reasonable accommodation. Plaintiff's decision to reject the letter carrier position in favor of applying for a reasonable accommodation should not result in Plaintiff losing his status as a "qualified person."

Lastly, Defendant has failed to provide evidence to refute Plaintiff's vocational evidence regarding the 60 vacant, funded positions he was allegedly qualified to perform during the time period at issue.  Plaintiff's claim that he was qualified to perform these positions has not been sufficiently rebutted by Defendant.

Based on the foregoing, the Court finds that Defendant has not satisfied his burden of establishing, as a matter of law, that Plaintiff could not perform the essential functions of his former position with or without reasonable accommodation.  The Court further holds that it cannot find, as a matter of law, that Plaintiff lost his status as a "qualified person" by rejecting the letter carrier position.  Because material issues of fact exist with respect to whether Plaintiff is indeed a qualified individual with a disability, Plaintiff's request that the Court find as a matter of law that he is a "qualified individual with a disability" under Section 501 of the Rehabilitation Act is denied.

### 3.    Duty to Accommodate

Under the Rehabilitation Act and the ADA, an employer must reasonably accommodate the known physical or mental limitations of an

otherwise qualified individual with a disability, unless the
accommodation would impose an undue hardship on the employer.  42
U.S.C. § 12112(b)(5)(A).  Once an employer becomes aware of the need
for accommodation, that employer has a mandatory obligation to engage
in an interactive process with the disabled employee to identify
reasonable accommodations.  29 C.F.R. 1630.2(o)(3); *Barnett v. U.S.
Air Inc*., 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), vacated on
other grounds, 535 U.S. 391 (2002).  This duty is triggered when the
employer receives notice, from either the employee or the employee's
representative, that the employee is disabled and requests a
reasonable accommodation.  *Id*.  An employer who fails to engage in the
interactive process in good faith is liable to the employee for
remedies provided in the ADA.  *Barnett*, 228 F.3d at 1116; *Humphrey*,
239 F.3d at 1137-1138.  Summary judgment for the employer is
inappropriate where there is a genuine dispute that the employer
engaged in the interactive process in good faith.  *Barnett,* 228 F.3d
at 1116; *Morton v. United Parcel Serv.*, 272 F.3d 1249, 1257 (9th Cir.
2001).

To recover on his failure to accommodate claim, Plaintiff must
not only demonstrate that he is a qualified individual with a
disability, but must also prove the following: 1) Plaintiff or one of
his doctors notified USPS that Plaintiff was disabled and requested a
reasonable accommodation; 2) USPS failed to engage in the interactive
process in good faith; and 3) a reasonable accommodation would have
been possible.
///

ORDER . . . - 13

### a.    Notice of Plaintiff's Disability

In order to request a reasonable accommodation, an employee need only "inform the employer of a need for an adjustment due to a medical condition using plain English and need not mention the ADA or use the phrase reasonable accommodation." *Barnett*, 228 F.3d at 1112 (internal quotation marks omitted).  A request for a reasonable accommodation need not be in writing.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999); *Wells v. Mutual of Enumclaw*, 2005 WL 2035066, at *6 (D.Idaho 2005).  While an employee need not use any particular language, the employer's duty is not triggered unless the employee or his representative "provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Taylor*, 184 F.3d at 313; *See also Summers v. A. Teichert & Son*, 127 F.3d 1150, 1153 (9th Cir. 1997) (holding no triable issue of fact existed where employee had not asked for accommodation); *Wells*, 2005 WL 2035066 at *6 (explaining that employee suffering from dementia did not request a reasonable accommodation where he failed to mention his diagnosis to his employer or provide documentation from his doctor).

Plaintiff contends that he and Dr. Roth made several requests for an accommodation between May and November 2003.  (Ct. Rec. 54-1 at 15).  Plaintiff asserts that he informed Youngblood and Kuntz about his emotional problems and his need to take sick leave when he spoke to them about taking FMLA leave in April of 2003.  Plaintiff further argues that he requested a reassignment in a conversation with Human

///

ORDER . . . - 14

Resources Manager Gay Schroff in June.  Finally, Plaintiff points to five documents he believes triggered the interactive process.

Defendant indicates that when Plaintiff sought FMLA leave, both Plaintiff's doctors and USPS believed that Plaintiff's stress issues could be resolved within 4 to 12 weeks.  According to Defendant, its duty to engage in the interactive process was not triggered until October 20, 2003, when Dr. Roth informed USPS that Plaintiff was "permanently disabled from the job of customer service supervisor." (Ct. Rec. 48 at 10).  Allegedly, none of Plaintiff's earlier communications specified that his request for reassignment was based on a medical condition.

While it is apparent that USPS's duty to engage in the interactive process was triggered before November, a factual issue exists regarding the exact date that the process was triggered.  As Defendant observes, the documentation Dr. Roth and Dr. Smith submitted to USPS in April indicated that Plaintiff's health issues would be temporary.  Plaintiff's letter of July 20, 2003, does not mention his medical conditions, although he does refer to the fact that he has been on FMLA leave.  Neither of these communications triggered the interactive process.  There is a factual dispute concerning Plaintiff's conversation with Schroff in June of 2003.  Plaintiff alleges that his representations in this conversation were sufficient to trigger the interactive process.  Defendant argues that Plaintiff did not explain that this request was based on medical issues.  On September 7, 2003, Dr. Roth wrote to Buntrock regarding Plaintiff's request for FMLA leave.  Dr. Roth explained that Plaintiff was

suffering from anxiety and that this condition was being managed with medication.  Dr. Roth also recommended that Plaintiff "look for work elsewhere in the postal service" because "he has described his time at his current assignment as 'worse than his duty at Vietnam.'"  The interactive process may very well have been triggered by this correspondence.

The evidence submitted by the parties demonstrates that the interactive process was triggered, at the latest, on October 21, 2003. On October 21, 2003, Dr. Roth sent a letter to Youngblood, explicitly stating that Plaintiff was being treated for PTSD with both counseling and medication.  Dr. Roth further states, "it is my professional opinion that he is not able to return to work under the condition [sic] that he has had in the past as a customer service supervisor." This letter notified USPS that Plaintiff had a medical condition that would make it impossible for him to continue in his current position. It also recommended changing Plaintiff's duties in response to that condition.  These two facts provide the required notice.

### b.  Engage in the Interactive Process

Plaintiff argues that USPS failed to enter into the interactive process in good faith in two respects.  First, Plaintiff alleges that Defendant unlawfully delayed in initiating the interactive process. Second, Plaintiff alleges that, to the extent that Defendant did engage in the interactive process, it disregarded its continuing duty to identify an accommodation for Plaintiff.

Defendant argues that a delay of several months in initiating the interactive process does not constitute an unreasonable delay.  (Ct.

ORDER . . . - 16

Rec. 48 at 13).  Defendant further argues that its duty to accommodate Plaintiff ended after it offered him the letter carrier position.

### i.  Unreasonable Delay

A party who unreasonably delays the interactive process is not acting in good faith.  *Barnett*, 228 F.3d at 1115.  Defendant has directed the Court's attention to case law in an attempt to establish that delays of significantly longer periods than one month are not unreasonable.  The cases cited by Defendant are distinguishable from the present inquiry.  All three concern delays in providing a reasonable accommodation after the employer and employee had already formally engaged in the interactive process.  In contrast, Plaintiff's argument is that Defendant unreasonably delayed in engaging in the interactive process altogether.

The Court finds that a genuine issue of fact exists as to whether Defendant unreasonably delayed in engaging in the interactive process. As explained above, the length of the delay is disputed and the length of the delay may be dispositive.  If Plaintiff requested an accommodation in June, the five month delay may have been unreasonable.  However, if the interactive process was not triggered until September or, at the latest, October, the delay is less likely to be unreasonable.

### ii.  Continuing Duty

An employer's duty to engage in the interactive process in good faith includes not only the obligation to directly communicate with the employee regarding possible accommodations, but also the duty to consider any requests made by the employee.  *Zikcovic v. Souther*

*California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citing *Barnett*, 228 F.3d at 1114-1115). The employer should also "offer and discuss available alternatives when the [employee's] request is too burdensome." *Barnett*, 228 F.3d at 1115. Once the interactive process has been triggered, the employer has a continuing duty to accommodate the disabled employee. This duty is not exhausted by one effort. *McAldrin*, 192 F.3d at 1237; *Humphrey*, 239 F.3d at 1138.

Plaintiff argues that Defendant failed to engage in the interactive process in good faith because, having rejected Plaintiff's proposed accommodation, USPS did not offer any practical alternatives. Defendant argues that it offered Plaintiff the letter carrier position and that it is not obligated to create a position for Plaintiff. Defendant asserts that Plaintiff never suggested an alternative position and never asked to be considered for the next vacancy that arose.

Defendant has also argued that it provided Plaintiff with a reasonable accommodation by permitting him to use his sick leave until his application for disability requirement was approved. (Ct. Rec. 48 at 1). While USPS was not required to continue Plaintiff's sick leave until the resolution of his disability application, Defendant has represented that it is "the policy of the postal service, Spokane District to allow an employee who applies for disability retirement to [be paid his sick leave]." (Ct. Rec. 49 ¶ 41). It seems clear that sick pay was not provided as a reasonable accommodation.

The Court finds that disputed issues of material fact exist as to whether Defendant disregarded the continuing duty to search for

ORDER . . . - 18

reasonable accommodations for Plaintiff.  The Court cannot find, as a matter of law, that Defendant failed to engage in the interactive process in good faith.

### c.    Possibility of Reasonable Accommodation

In a failure to accommodate claim, the employee bears the initial burden of proving that a reasonable accommodation is possible. *Zikovic*, 302 F.3d at 1088; *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).  If the employee provides sufficient evidence, the burden then shifts to the employer to demonstrate that "the requested accommodation was not reasonable." *Vinson*, 288 F.3d at 1154.

Plaintiff argues that there were at least 60 positions that came open between 2003 and 2004 to which he could have been reassigned. Plaintiff has provided a declaration from Fred Cutler, a Vocational Rehabilitation Counselor and Consultant.  Declaration of Fred Cutler, M. Ed., September 13, 2006, 15-16.  Based on a document provided by USPS, entitled "Spokane District EAS vacancies 2003-2004," Mr. Cutler concludes,

> In my professional opinion, [from the interactive process], it is likely that Mr. [Linder] could have been transferred to one of the 60 positions I identified or to another suitable, available position.  And such a successful transfer of Mr. Linder would certainly be considered an appropriate reasonable accommodation as I have described above.

Cutler Decl. 16.  Plaintiff argues that had USPS engaged in the interactive process, it could have assigned Plaintiff to one of the positions that became open in 2004.  (Ct. Rec. 62-1 at 10).

Defendant asserts that none of the ten jobs offered by Plaintiff as examples were open when he initially requested a reasonable accommodation.  While USPS "can usually identify upcoming vacancies up

ORDER . . . - 19

to 60 days in advance [. . .] there were no other vacancies within 60 days." (Ct. Rec. 48 at 16).   Defendant further argues that many of the vacant jobs in Plaintiff's commuting area between 2003 and 2004 were supervisor positions that Plaintiff would not have been able to accept due to his medical condition.

The Court finds that a genuine issue of fact exists as to whether a reasonable accommodation would have been possible for Plaintiff. Mr. Cutler's declaration indicates that USPS probably could have found a position for Plaintiff sometime between 2003 and 2004.   On the other hand, as Defendant suggests, Plaintiff's particular disability (inability to supervise) and physical limitations (bad knees and shoulder) could have prevented USPS from finding Plaintiff a position that met his needs.

Based on the foregoing, Defendant's Motion for Summary Judgment on the issue of whether Defendant failed to accommodate Plaintiff's alleged disability is denied.   Likewise, Plaintiff's motion for partial summary judgment requesting findings, as a matter of law, that "The United States Postal Service unlawfully delayed in initiating the interactive process with Plaintiff to determine whether he is entitled to a workplace accommodation," "The United States Postal Service unlawfully failed to engage in the interactive process in good faith," and "It would have been possible for the United States Postal Service to provide Plaintiff with a reasonable accommodation" is also denied.

B.   **Discriminatory Discharge**

In order to prevail on a claim of discriminatory discharge under the ADA, the employee must prove two elements: first, that he is a

qualified individual with a disability; and second, that he was
discharged because of that disability.  *Humphrey*, 239 F.3d at 1133.
As indicated above, material issues of fact exist with respect to
whether Plaintiff is indeed a qualified individual with a disability.
Accordingly, Defendant is not entitled to summary judgment, as
requested, on the discriminatory discharge claim.

Plaintiff has moved for summary judgment asking that the Court
find that "The United States Postal Service constructively discharged
Plaintiff."  An employee may be discharged either constructively or
actually.

An employee is constructively discharged when "looking at the
totality of the circumstances, 'a reasonable person in [the
employee's] position would have felt that he was forced to quit
because of intolerable and discriminatory working conditions.'"
*Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir. 1989); *Wallace v.
City of San Diego*, 460 F.3d 1181, 1189-90 (9th Cir. 2006).  Whether
working conditions are sufficiently egregious to support a
constructive discharge claim is usually a question for the factfinder.
*Thomas*, 877 F.2d at 1434; *Brooks v. City of San Mateo*, 229 F.3d 917,
930 (9th Cir. 2000).  However, in order to survive summary judgment,
an employee alleging constructive discharge "must show some
aggravating factors, such as a continuous pattern of discriminatory
treatment."  *Thomas*, 877 F.2d at 1434.  Actions that might give rise
to a constructive discharge claim include requiring the employee to
perform unusually dangerous duties, subjecting the employee to violent
acts or harassment, or subjecting the employee to punishment.  *Id.*

ORDER . . . - 21

Where an employer gives a disabled employee a choice between two alternatives that would both remove the employee from his or her position, this action constitutes actual, as opposed to a constructive, discharge. *Cooper v. Neiman Marcus Group*, 125 F.3d 786 (9th Cir. 1997). In *Cooper*, the employer placed the employee on 90 days probation and offered her a choice between taking the time to seek other employment or continuing to work and "attempting to perform to a standard level in [her] job." *Id.* at 788-789. Under either option, "her termination would be effective within 90 days." *Id.* at 791. The Ninth Circuit held that this ultimatum constituted actual discharge. *Id.* at 792.

Plaintiff claims that USPS "constructively discharged Mr. Linder or forced his resignation." Specifically, Plaintiff alleges that USPS's letter of October 7 forced him to choose between resigning and applying for disability benefits or being discharged. (Ct. Rec. 54-1 at 20). Although the October 7 letter also gave Plaintiff the option of returning to work with his doctor's permission, Plaintiff contends that his doctor would not provide the required permission. Plaintiff asserts that USPS was aware of this fact from his own and Dr. Roth's correspondence. The October 7 letter also failed to mention the possibility of requesting a reasonable accommodation.

Defendant argues that Plaintiff has presented no evidence that would persuade a reasonable jury that his work environment in Coeur d'Alene was intolerable and discriminatory. (Ct. Rec. 48 at 18). Defendant further argues that it did not force Plaintiff to retire because Plaintiff had decided to retire months before receiving the

October 7 letter.  (Ct. Rec. 48 at 19).  Plaintiff replies that his requests for reassignment and other efforts to obtain a reasonable accommodation demonstrate his desire to continue working.  (Ct. Rec. 62-2 at 32).

### 1.   Intolerable and Discriminatory Working Conditions

Plaintiff has failed to submit evidence from which a reasonable trier of fact could infer that his working conditions were so intolerable that a reasonable person would have felt compelled to quit.  Although Plaintiff's letter of July 20 indicates that his working conditions in Coeur d'Alene were very stressful, stress does not rise to the level of egregiousness necessary to state a claim for constructive discharge.  *See Thomas*, 877 F.2d at 1434.  More importantly, Plaintiff's constructive discharge allegation relies on the ultimatum presented in USPS's letter of October 7.  *See infra*.

### 2.   Actual Discharge

A genuine issue of fact exists as to whether Defendant discharged Plaintiff in its letter of October 7.  Like the employee in *Cooper*, Plaintiff was given a choice between two options that would end his employment.  Unlike the employee in Cooper, however, Plaintiff was also offered a third option, that of returning to work.  Plaintiff contends that this option was illusory because Dr. Roth would not permit him to return to his position in Coeur d'Alene and USPS was aware of this fact.  However, neither Plaintiff's letter of July 20 nor Dr. Roth's letter of September 7 conclusively state that Plaintiff would not be released to return to work.

///

ORDER . . . - 23

Defendant has also submitted evidence in support of its contention that Plaintiff always intended to retire after exhausting his sick leave.  Youngblood's notes from her conversation with Plaintiff regarding FMLA leave in April indicate that Plaintiff planned to use a year of sick leave and then retire.  At the conclusion of his FMLA leave in September, Plaintiff requested additional sick leave rather than a reassignment.  Finally, Plaintiff stated that he had decided to retire in a document dated September 24, 2003, two weeks before he received the letter containing the alleged ultimatum.

Based on the foregoing, the Court finds that summary judgment is inappropriate on Plaintiff's claim that "The United States Postal Service constructively discharged Plaintiff."

**C.  Hostile Work Environment**

The Ninth Circuit has not yet recognized the creation of a hostile work environment cause of action under the ADA.  *Brown v. City of Tucson*, 336 F.3d 1181, 1188-1192 (9th Cir. 2003); *Roberts v. Dimension Aviation*, 319 F.Supp.2d 985, 988 (D.Ariz. 2004).  However, the Third, Fourth, Fifth, and Eighth Circuits have found such a cause of action exists.  *Roberts*, 336 F.Supp.2d at 988 n. 2.  Courts frequently assume, without deciding, that a hostile work environment cause exists in order to dispose of a plaintiff's claims.  *Walton v. Mental Health Ass'n*, 168 F.3d 661, 666 (3d Cir. 1999); *Flowers v. Southern Regional Physician Serv.*, 247 F.3d 229, 233 (5th Cir. 2001).

To prevail on a claim of hostile work environment under the ADA, the employee must prove five elements: 1) that he has a disability;

2) that he was subjected to unwelcome harassment; 3) that the harassment was based on his disability; 4) that the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment;" and 5) that the employer knew or should have known about the harassment and failed to take prompt action to stop it. *Walton*, 168 F.3d at 667; *Flowers*, 247 F.3d at 235.

When determining whether a work atmosphere is abusive or hostile, courts consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening, and whether it unreasonably interfered with the employee's performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 23 (1993); *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000).[1]  The employee bears the burden of demonstrating that the harassment was sufficiently severe to affect his or her job performance. *Hess v. Multnomah County*, 216 F.Supp.2d 1140, 1157 (D.Or. 2001).

Plaintiff contends that when Defendant's conduct toward Plaintiff is viewed in its totality, a factual dispute exists as to whether Plaintiff experienced a hostile work environment.  Plaintiff alleges that USPS subjected him to a hostile work environment by denying his request for continued sick leave, declaring him to be AWOL after he

---

[1]The hostile work environment claim that has been recognized under the ADA is "modeled after the similar claim under Title VII [of the Civil Rights Act of 1964]." *Flowers*, 247 F.3d at 235. Title VII cases dealing with hostile work environments therefore supply persuasive authority.  In this case, both parties refer to such cases.

properly requested additional sick leave, summoning him to an investigative interview in Coeur d'Alene on October 16, and denying his request for a reasonable accommodation without "any medical information to support its decision." (Ct. Rec. 54-1 at 22). Plaintiff further argues that DRAC violated its own policy of avoiding even the appearance of bias in addressing reasonable accommodation requests by permitting Youngblood, Kuntz, and Schroff, all of whom had previously taken adverse actions against Plaintiff, to participate in the DRAC meeting. *Id.*

Defendant argues, "none of the actions alleged by Plaintiff constitute a hostile work environment." (Ct. Rec. 27-1 at 18). There is no evidence that Plaintiff was ever harassed while he worked in Coeur d'Alene, and an employee cannot be subjected to a hostile work environment while he is at home on leave. In placing Plaintiff on AWOL status, USPS did not treat him any differently than it would any other employee who failed to return to work. Defendant further argues that Plaintiff has failed to demonstrate that any of the alleged harassment was based on his disability. According to Defendant, USPS was unaware that Plaintiff had a disability until he refused to return to work in September. *Id.*

The Court finds that Plaintiff has failed to demonstrate he was subjected to a hostile work environment. Defendant correctly notes that none of the alleged harassment identified by Plaintiff occurred in the workplace. The Court is aware of no case holding that harassment outside the workplace can give rise to a claim for hostile work environment. Accordingly, the Court finds that summary judgment

in favor of Defendant is appropriate on Plaintiff's claim that he was subjected to a disability-based hostile work environment.

### D.    ADAAA

This Court's April 6, 2009, scheduling order directed the parties to submit supplemental briefing addressing the impact of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). The parties complied in late May and early June 2009.

The ADAAA was signed into law in late September 2008 and made effective January 1, 2009. As discussed by the Ninth Circuit in *Rohr v. Salt River Project Agricultural Improvement and Power District*, 555 F.3d 850, 853 (9th Cir. 2009), in enacting the ADAAA, Congress emphasized it "intended that the Act 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and provide broad coverage." The ADAAA thus expands the class of individuals who are entitled to protection under the ADA.  *Id*.  While the Ninth Circuit in *Rohr* declined to decide whether the ADAAA applied retroactively, the Court noted that the "original congressional intent" when it enacted the ADA bolstered its conclusions.  *Id*. at 861-862.

Defendant argues that the ADAAA does not apply retroactively. *Moran v. Premier Educ. Group, LP*, 599 F.Supp.2d 263, 272 (D.Conn. 2009 (collecting cases). Defendant thus contends that the ADAAA should have no bearing on this case. Defendant asserts that, at most, the ADAAA broadened coverage for individuals alleging disabilities, but did not have an effect on the extent of what Plaintiff must prove to establish he is a qualified individual with a disability and that his

employer failed to reasonably accommodate his known limitations.    42
U.S.C. § 12112(b)(5)(A).

The Court notes, without deciding the issue, that it appears the
ADAAA does not apply retroactively.  However, even considering the
broadening of coverage mandated by the ADAAA, it appears the ADAAA is
only applicable to whether Plaintiff is considered disabled for
purposes of the ADA and the Rehabilitation Act, an issue the Ninth
Circuit decided (several months after the ADAAA was approved) should
be addressed by the trier of fact.  Accordingly, for purposes of the
instant motions for summary judgment, the ADAAA does not apply.

### E.    Conclusion

Based on the foregoing, the Court grants in part and denies in
part Defendant's Motion for Summary Judgment.  The Court grants
summary judgment to Defendant on Plaintiff's hostile work environment
claim, but denies Defendant's motion with respect to the remaining
claims.  Plaintiff's Motion for Partial Summary Judgment is denied.

## II. Motion to Strike Affirmative Defenses

On September 18, 2006, Plaintiff filed a motion to strike six
affirmative defenses asserted by Defendant.  (Ct. Rec. 35).  Defendant
responded arguing only that their second affirmative defense,
Plaintiff's failure to state a claim upon which relief can be granted,
should not be stricken.  (Ct. Rec. 50).  Based on the Court's above
review and analysis of Plaintiff's claims, as well as Defendant's
failure to contest Plaintiff's motion with respect to the other five
affirmative defenses, Plaintiff's motion to strike shall be granted.
///

ORDER . . . - 28

Defendant's first, second, third, fourth, fifth, and eighth affirmative defenses are stricken.

The Court being fully advised, **IT IS HEREBY ORDERED as follows:**

1. Defendant's Motion for Summary Judgment (**Ct. Rec. 26**) is **GRANTED in part and DENIED in part.**

2. Summary judgment is granted to Defendant on Plaintiff's claim that he was subjected to a disability-based hostile work environment.

3. Plaintiff's Motion for Partial Summary Judgment (**Ct. Rec. 30**) is **DENIED.**

4. Plaintiff's Motion to Strike Affirmative Defenses (**Ct. Rec. 35**) is **GRANTED.**

5. Defendant's first, second, third, fourth, fifth, and eighth affirmative defenses are **STRICKEN.**

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this  18th  day of August, 2009.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge